**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GINA NEWMAN,<br><br>*Plaintiff*,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>*Defendant.* | Civil Action No. 14-5995<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

Before this Court is Plaintiff Gina Newman's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of supplemental security income benefits ("disability benefits") to Plaintiff. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the opinion fails to: (1) compare the combined effect of all Plaintiff's impairments to the relevant Medical Listings ("Listings") at step three, (2) rely on substantial evidence in support of the residual functional capacity ("RFC") assessment at step four, (3) properly evaluate the testimony's credibility at step four, and (4) compare Plaintiff's RFC with her past work as a medical secretary at step four. For the reasons set forth below, the Commissioner's decision must be **AFFIRMED**.

**I.     STANDARD OF REVIEW AND APPLICABLE LAW**

**A.  Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  This Court must affirm the Commissioner's decision if substantial evidence supports the decision.  42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003).  Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate."  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance."  Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 545 (3d Cir. 2003).

"[T]he substantial evidence standard is a deferential standard of review."  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Accordingly, the standard places a significant limit on the district court's scope of review.  The reviewing court should not "weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Therefore, even if this Court would have decided the matter differently, it is bound by the Commissioner's findings of fact so long as they are supported by substantial evidence.  Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age."  Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972).

### B. Five-Step Sequential Analysis of Adult Disability

In order to determine whether an adult claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must ask whether the claimant has "residual functional capacity" such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional

capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503. The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

## II. DISCUSSION

### A. Procedural History

Plaintiff filed an application for supplemental security income on July 29, 2011. Tr. 191-97. The application was denied initially on January 19, 2012, and on reconsideration on April 26, 2012. Tr. 154-58, 160-62. On March 27, 2013, the ALJ found that Plaintiff was not disabled under the standards for adult disability. Tr. 41-52. The Appeals Council denied Plaintiff's request for review on July 23, 2014. Tr. 1-4. Having exhausted her administrative remedies, Plaintiff then timely filed the instant action on September 25, 2014. Compl., Dkt. No. 1.

### B. Factual Background

Plaintiff was 33 years old on her alleged disability onset date. Tr. 135. She graduated from college, Tr. 63, 227, and has past relevant work experience as a recreational therapist and a medical secretary, Tr. 93-94. During the period relevant to this case, Plaintiff lived in a home with her husband and three children, who were ages three, one-and-a-half, and four months at the time of the administrative hearing. Tr. 61. Plaintiff reported that her husband and sister-in-law took care of her children. Tr. 74. She testified that she never carried her four-month-old baby, id., and that she could not bend over to pick up her children from the floor, Tr. 78. She further testified that her mother and sister prepared all meals. Tr. 78-79. She spent her time in the house watching television with her family, watching the children, and reading the newspaper. Id.

In her disability application paperwork, Plaintiff reported having no difficulty caring for her personal needs but denied preparing her own meals. Tr. 249-50. She stated she performed

4

light cleaning, went outside daily, walked, rode in a car, drove, shopped in stores for groceries and other items, and handled money without difficulty. Tr. 62, 250-51. She spent time with others daily and attended church regularly. Tr. 62, 252. At the administrative hearing, however, Plaintiff testified that she did no cooking, shopping (except for emergency shopping), laundry, or housework, Tr. 73-74, although she tried to help her husband unpack lighter groceries, Tr. 81. Plaintiff testified that she took over-the-counter Tylenol as needed for back pain, Tr. 66-67, 81, and that she waited six to eight hours between doses, Tr. 68.

### 1. Plaintiff's Asthma

Plaintiff has had asthma since childhood. Tr. 421. From January 28, 2011 to February 5, 2011, she received inpatient care at Bayonne Medical Center for shortness of breath, respiratory failure secondary to an asthma exacerbation, and tonic seizure. Tr. 311-409. At the time, she was six weeks pregnant. Tr. 325. A brain MRI taken on January 28, 2011 revealed negative findings. Tr. 379. Pulmonary function studies conducted on February 1, 2011 revealed moderate obstructive ventilator defect with associated air trapping. Tr. 383-84. Plaintiff's symptoms responded to nebulizer, steroid, and antibiotic treatment. Tr. 325, 387, 391, 403. She did not require intubation. Tr. 325. On discharge, Plaintiff was advised to continue nebulizer treatment and continue a short course of steroids; she was also given an inhaler and an EpiPen to use in case of emergency. Tr. 325-26.

From February 2011 to June 2012, Plaintiff attended three routine office visits with John Dedousis, M.D., for management of asthma. Tr. 445-50. Dr. Dedousis noted normal examination findings and prescribed medication. Id. In June 2012, he described Plaintiff's condition as "exertional asthma." Tr. 445.

### 2. Plaintiff's Back Pain

On January 4, 2011, the alleged disability onset date, Plaintiff sustained a work-related back injury when she fell on a wet bathroom floor. Tr. 410. X-rays taken at the emergency room that day were negative. Tr. 418. However, on January 18, 2011, a sacrum MRI revealed a disc bulge at L5-S1 indenting the ventral thecal sac and no evidence of sacral or coccyx fracture of subluxation, Tr. 410, and a lumbar spine MRI showed a disc bulge at L5-S1 indenting the ventral thecal sac and encroachment upon the exiting right L5 nerve root. Tr. 411.

Between January 2011 and September 2011, Plaintiff attended seven visits with Robin Innella, D.O., who prescribed heat, medication, and physical therapy for Plaintiff's lower back pain complaints. Tr. 412-18. Plaintiff displayed some limited range of motion and presented greater pain complaints during January visits, Tr. 415-18, but by February 23, 2011, she was observed to be neurovascularly intact with full range of motion in her back, negative straight leg-raising, and intact knee and ankle reflexes, and Dr. Innella cleared her to return to work, Tr. 414. At her final visits in May and September 2011, Plaintiff reported having only occasional lumbar pain. Tr. 412-13. Dr. Innella continued to document unremarkable examination findings and again reported that Plaintiff could return to work from an orthopedic standpoint. Id. Plaintiff had no additional treatment with Dr. Innella.

On December 27, 2011, in connection with Plaintiff's workers compensation claim, Arthur Tiger, M.D., evaluated Plaintiff at her attorney's request. Tr. 443-44. Plaintiff complained of back pain and limitations. Tr. 443. Dr. Tiger noted tenderness in several areas of Plaintiff's body, reduced lumbar spine range of motion, moderate loss of the usual lumbar lordotic curvature, mild weakness in the right extensor hallucis longus, and positive straight leg-raising to 70 degrees. Tr. 444. He opined that Plaintiff had a 37.5 percent partial disability. Id.

### 3. Consultative Examinations

On October 24, 2011, Rahel Eyassu, M.D., examined Plaintiff at the state agency's request. Tr. 421-33. Plaintiff reported having asthma since childhood, and that she currently used a bronchodilator several times a day, along with a nebulizer daily. Tr. 421. On examination, Plaintiff could walk at a reasonable pace, squat, and walk on her heels and toes. Id. Her lungs were clear to auscultation and had a normal AP diameter. Tr. 421-22. She exhibited full range of motion in all areas, including her lumbar spine, and she had no edema in her extremities. Tr. 422, 424-25. A chest x-ray was normal. Tr. 423. In addition, pulmonary function studies revealed an FEV1 score of 1.63, Tr. 426-33, and Dr. Eyassu noted that the studies revealed a restrictive, rather than obstructive, pattern. Tr. 422. He identified no particular work-related limitations. Tr. 425.

On November 29, 2011, Leah Holly, D.O., evaluated the severity and functional effects of Plaintiff's chronic lung disease/asthma based on a review of the record. Tr. 434-39. Dr. Holly opined that Plaintiff's impairments did not meet or medically equal any listed impairment. Tr. 434. Rather, she found that Plaintiff could lift, carry, push, and pull ten pounds occasionally; stand and/or walk for about two hours and sit for about six hours in an eight-hour workday with normal breaks; never climb ladders, ropes, or scaffolds; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Tr. 435-39. Plaintiff's environmental limitations required that she avoid even moderate exposure to respiratory irritants and physical hazards. Id.

Dr. Holly described Plaintiff's impairment as "moderately severe asthma and recurrent bronchitis." Tr. 442. She noted that Plaintiff had been hospitalized from January 28, 2011 through February 5, 2011, when she was six weeks pregnant, for an episode of respiratory failure with loss of consciousness and associated seizure, but her condition improved with bronchodilator, steroid, and antibiotic treatment, and she did not require intubation. Id. Dr. Holly noted that a brain MRI

7

was normal. Id. She further explained that on February 1, 2011, spirometry testing showed normal diffusion capacity with a best FVC score of 2.47 and an FEV1 score of 1.30. Id.

### 4. Vocational Expert's Testimony

During the administrative hearing, the ALJ asked the vocational expert to assume a person of Plaintiff's age, education, and work experience, who could perform sedentary work as defined in the regulations with the following restrictions: a sit/stand option, allowing her to sit or stand alternatively at will, provided that she is not off-task for more than five percent of the work period; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional stooping, kneeling, crouching, and crawling; no exposure to extreme cold or heat; and no concentrated or frequent exposure to bronchial irritants such as noxious fumes, odors, dusts, and gases. Tr. 94-95. The vocational expert testified that such a person could perform Plaintiff's past relevant work as a medical secretary. Tr. 95.

### C. The ALJ's Decision

The ALJ found that plaintiff had not engaged in substantial gainful activity since January 4, 2011, the date she filed her SSI application. Tr. 46. The ALJ determined that Plaintiff had "severe" impairments consisting of lumbosacral discopathy at L5-S1; and bronchial asthma, status post respiratory failure. Id. The ALJ concluded that Plaintiff's impairments did not meet or medically equal the criteria of any impairment in the Listings. Tr. 47. The ALJ subsequently found that Plaintiff retained the residual functional capacity to, in an eight hour workday: perform sedentary work, as defined in the regulations, with a sit/stand option, allowing her to sit or stand alternatively at will, provided that she is not off task more than five percent of the work period. Id. Moreover, she can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; must avoid all exposure to extreme cold or heat; and must

8

avoid concentrated or frequent exposure to bronchial irritants such as noxious fumes, odors, dust, and gasses. Id.

The ALJ considered Plaintiff's subjective complaints in assessing her residual functional capacity, but found that her statements concerning the intensity, persistence, and limiting effects the alleged symptoms were not entirely credible. Tr. 49-50. The ALJ found that Plaintiff is capable of performing past relevant work as a medical secretary, which does not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity. Tr. 51. In reaching this finding, the ALJ relied on the testimony of the vocational expert. Id. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act, and denied her claim for SSI. Id.

### D. Analysis

Plaintiff alleges that the Commissioner's decision is not supported by substantial evidence because the opinion fails to: (1) compare the combined effect of all Plaintiff's impairments to the relevant Medical Listings ("Listings") at step three, and (2) base the step four residual functional capacity ("RFC") assessment on substantial evidence. These arguments are unpersuasive because the ALJ's decision appropriately assesses Plaintiff's impairments under applicable law and is supported by substantial evidence.

#### 1. Alleged Failure to Compare the Combined Effect of All Plaintiff's Impairments to Relevant Medical Listings at Step Three

Plaintiff contends that the ALJ erred by failing to meaningfully compare her impairments, both individually and in combination, to a listed impairment under the step three analysis. The Court disagrees because the ALJ based his determination on substantial evidence, and Plaintiff did not meet her burden of proving that her impairments meet or medically equal a Listing. See Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. § 404.1512.

The Listings bestow an irrefutable presumption of disability; consequently, "[f]or a claimant to show that her impairment matches a [listed impairment], it must meet all of the specified medical criteria." Zebley, 493 U.S. at 530.  To establish medical equivalency, a claimant must present medical evidence that her impairment, unlisted impairment, or combination of impairments, is equal in severity and duration to all of the criteria of a listed impairment.  Id. at 520; see also 20 C.F.R. § 416.926.  In this case, the record does not reflect any discernable attempt by Plaintiff to demonstrate she possesses all the specified medical criteria of a listed impairment to meet this stringent requirement.

a. The ALJ's alleged failure to compare Plaintiff's impairments to Listing 1.04

With respect to Plaintiff's lumbosacral discopathy at L5-S1, she asserts that the ALJ should have found this impairment medically equivalent to Listing 1.04.  Pl.'s Br., Dkt. No. 9 at 15-17. Such a Listing is met only when Plaintiff demonstrates to the ALJ that she possesses the underlying spinal disorder and it resulted in comprise of a nerve root or the spinal cord.  20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.  In addition, the impairment must be accompanied by either evidence of nerve root compression with sensory or reflex loss, and positive straight-leg raising test; spinal arachnoiditis manifested by severe burning or painful dysesthesia, requiring changes in position or posture more than once every two hours; or lumbar spinal stenosis manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.  Id.  Plaintiff states she submitted evidence of a compromised nerve root, but otherwise fails to adequately specify how her symptoms equal those of the Listing.  Tr. 15-17.

Plaintiff's claim that she suffered from a compromised nerve root, even if accepted as true, does not alone satisfy her burden of demonstrating how her physical impairment rises to the stringent requirements of Listing 1.04. The record indicates that X-rays taken at the emergency

10

room on the day of Plaintiff's back injury were negative, Tr. 418; however MRIs revealed a disc bulge at L5-S1 indenting the ventral thecal sac and encroachment upon the exiting right L5 nerve root, Tr. 410-11. During visits with Dr. Robin Innella, Plaintiff displayed some limited range of motion and mentioned greater pain complaints during January 2011, Tr. 415-18, but by February 2011 she was observed to be neurovascularly intact with full range of motion in her back, negative straight leg-raising, and intact knee and ankle reflexes, Tr. 414. Dr. Innella cleared her to return to work. Id. During her final visits, Plaintiff reported having only occasional lumbar pain. Tr. 412-13. Dr. Innella continued to document unremarkable examination findings and again reported that Plaintiff could return to work from an orthopedic standpoint. Id.

Dr. Arthur Tiger noted tenderness in several areas of Plaintiff's body, reduced lumbar spine range of motion, moderate loss of the usual lumbar lordotic curvature, mild weakness in the right extensor hallucis longus, and positive straight leg-raising to 70 degrees. Tr. 444. He opined that Plaintiff had a 37.5 percent partial disability. Id. Dr. Rahel Eyassu found that Plaintiff could walk at a reasonable pace, squat, walk on her heels and toes, and exhibited full range of motion in all areas, including her lumbar spine, and she had no edema in her extremities. Tr. 421-22, 424-25. Dr. Leah Holly found that Plaintiff could lift, carry, push, and pull ten pounds occasionally; stand and/or walk for about two hours and sit for about six hours in an eight-hour workday with normal breaks; never climb ladders, ropes, or scaffolds; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Tr. 435-39. Contrary to Plaintiff's claims, no combination of evidence in the record satisfies her burden of proving she meets all of Listing 1.04's required medical findings.

Furthermore, the ALJ stated that he considered Plaintiff's impairments, both singularly and in combination, and noted that they did not meet or medically equal any of the Listings. Plaintiff

argues "the entirety of the step three analysis . . . amounts to two declaratory statements," and "[n]o medical evidence is discussed." Pl.'s Br. at 14-15. This is incorrect. The ALJ's decision permits meaningful review because it frequently cites to the record while articulating why Plaintiff's physical impairments do not meet or equal a listed impairment. See Jones, 364 F.3d at 505. For example, the ALJ describes and considers: Plaintiff's "normal lumbar spine," Tr. 48; the opinions of multiple doctors that "the claimant could return to work," id.; that Plaintiff's "straight leg raising was negative, her lumbar flexion was normal and she exhibited no lumbar spasm," Tr. 49; and that Plaintiff "has had only minimal conservative treatment for her back while her testimony reveals that she had not had any epidural injections, surgery, chiropractic manipulations or heavy-duty pain medication for her back." Id.

The ALJ further explains his decision-making process by writing that "[t]he claimant was not fully credible to the extent that she felt she was disabled." Id. "The physical consultative examiner found no physical functional limitations," Tr. 50, and "the claimant's testimony that she is only capable of an extremely limited range of sedentary exertion . . . is wholly unsupported by a record showing minimal and only benign physical examinations, and treatment notes showing that with medication her breathing problems can be controlled." Id. Finally, the ALJ notes that Plaintiff's self-completed Adult Functional Report "is in direct contradiction to the hearing testimony, with no medical evidence of deterioration in her impairments." Id. Accordingly, the ALJ's decision is clearly reasoned and based on substantial evidence. See Ventura, 55 F.3d at 901.

      b. <u>The ALJ's alleged failure to compare Plaintiff's impairments to Listing 3.02A</u>

With respect to Plaintiff's asthma, she asserts that the ALJ should have found this impairment medically equivalent to Listing 3.02. Pl.'s Br. at 17-20. Plaintiff's contention is

misplaced; the record fully supports the ALJ's finding that the criteria of Listing 3.02A were not met.

Plaintiff's argument focuses on the ALJ's alleged disregard of her October 14, 2011 FEV1 score of 1.24. Pl.'s Br. at 17; Tr. 432. Plaintiff believes this score presumptively establishes disability under the Listing. This belief is only correct insofar as Listing 3.02A requires chronic obstructive pulmonary disease with an FEV1 equal to or less than 1.25 for someone of Plaintiff's height. 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02(A). However, the FEV1 "should represent the largest of at least three satisfactory forced expiratory maneuvers." 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00(E). In this case, Plaintiff's FEV1 scores were 1.24, 1.41, 1.56, 1.57, 1.63, and 1.63. Tr. 428-33. Plaintiff's argument fails because the largest score of any three of the maneuvers would be at least 1.56. The ALJ's decision clearly discusses Plaintiff's FEV1 testing, and cites to all six of her scores. Tr. 49; see Exhibit 4F.

Plaintiff next asserts, as she did regarding the assessment of her physical impairments, that the ALJ's decision is "at no time . . . backed up by the essential analysis required by [Listing 3.02]." Pl.'s Br. at 17-18. First, the burden to prove that a Listing is met falls squarely upon the Plaintiff and not the ALJ. 20 C.F.R. § 404.1512. Second, the ALJ provides ample recitation of the relevant facts and his method of weighing and assessing those facts. See Tr. 46-51. For example, the ALJ's decision documents Plaintiff's hospitalization for respiratory failure from January 28, 2011 to February 5, 2011, making note that medical records showed improved breathing with bronchodilator, steroid, and antibiotic treatment. Tr. 49. The ALJ's decision further acknowledges the relative severity of that episode, but observes: "she did not require intubation and she was completely stabilized shortly after arriving at the emergency room," id.; Dr. Eyassu found she had "clear lungs" and a normal chest X-ray, id.; "her spirometry testing

showed a restrictive pattern of breathing, as opposed to an obstructive one," id.; and that she has not been re-hospitalized or intubated since the original January 2011 episode of respiratory failure, despite giving birth to two children since then, id.

The ALJ's written explanation of his decision-making processes permits meaningful review and rests upon substantial evidence.

### 2. Alleged Failure to Base the Step Four Residual Functional Capacity ("RFC") Assessment on Substantial Evidence

Plaintiff next argues that the ALJ failed to (1) sufficiently articulate the rationale for the RFC assessment, (2) properly evaluate the testimony's credibility, and (3) compare Plaintiff's RFC with her past work as a medical secretary. The Court disagrees.

First, as discussed above, the ALJ's decision does sufficiently articulate the rationale for the RFC assessment. The RFC assessment is an administrative finding, not a medical opinion, and the ALJ is alone responsible for crafting the claimant's RFC based upon consideration of the entire record. 20 C.F.R. Though the recitation of the evidence and the ALJ's treatment of that evidence may occur on different pages of the decision, an interplay between the two nonetheless exists. The ALJ discussed and assessed all the treatment notes from Plaintiff's primary care physician and psychiatrist, emergency room records, consultative examination reports, and Plaintiff's testimony. Tr. 46-51. Plaintiff's arguments in this vein are therefore unpersuasive.

Second, substantial evidence supports the ALJ's finding that Plaintiff's subjective statements were not fully credible. See Tr. 46-51. "The credibility determinations of an administrative judge are virtually unreviewable on appeal." Hoyman v. Colvin, 606 F.3d 678, 681 (3d Cir. 2015) (citing Bieber v. Dep't of Army, 287 F.3d 1358, 1364 (Fed. Cir. 2002)). In this case, the ALJ determined that Plaintiff's claims in her application that she went to church regularly, went shopping for groceries and clothing, could perform simple cleaning, was able to prepare

14

meals, and had no problems taking care of her person needs were in direct contradiction to her hearing testimony. Tr. 50, 56-102. The ALJ was skeptical of Plaintiff's testimony regarding her allegedly limited range of motion because it was "wholly unsupported by a record showing minimal and only benign physical examinations, and treatment notes showing that with medication her breathing problems can be controlled." Id. Her husband's testimony was also unsupported by any medical opinions in the record. Id. The ALJ's credibility findings are therefore based on substantial evidence.

Third, the ALJ properly compared Plaintiff's RFC with her past work as a medical secretary. Plaintiff neither argues nor establishes that she was incapable of performing her past relevant work as a medical secretary in light of her RFC, Pl.'s Br. at 30-33, despite her affirmative duty to do so. Bowen, 482 U.S. at 146 n.5. Had Plaintiff met her burden, the ALJ's finding would nonetheless be supported by substantial evidence. The ALJ compared the duties of a medical secretary with Plaintiff's self-report that her past job required walking for one hour; standing for one hour and thirty minutes; sitting for thirty minutes; frequently lifting less than ten pounds; and no climbing, reaching, crouching, or crawling. Tr. 51, 88-93, 242. The ALJ's finding also relied on the vocational expert's testimony. Tr. 51, 88-99.

### III. CONCLUSION

For the foregoing reasons, the Court finds the Commissioner's denial of benefits to Plaintiff to be supported by substantial evidence. The Commissioner's denial of disability benefits is therefore **AFFIRMED.**

Date: March 18, 2016                                  */s Madeline Cox Arleo*
                                                      **MADELINE COX ARLEO**
                                                      **UNITED STATES DISTRICT JUDGE**

15